ALEXIS MENAGE *vs.* MAX ROSENTHAL.

Suffolk.    November 10, 1904. — March 3, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Contract,* Construction. *Words,* "Draw."

If a manufacturer of goods employs a travelling salesman for one year under an agreement by which the manufacturer agrees to pay the salesman at the end of the agreement a certain percentage on net sales of all goods and a certain other percentage on the net profits of the manufacturer's business, and that in the

meantime the salesman is to be allowed "to draw for his maintenance and support during the term of this agreement, a sum equal to $100 per week", in addition to travelling expenses, which is to be deducted from the sum the salesman shall be found to be entitled to at the termination of the agreement, this does not guarantee to the salesman on final settlement the sum of $100 per week during the continuance of the agreement.

CONTRACT for alleged breach of an agreement in writing to employ the plaintiff as a travelling salesman for one year from January 1, 1896, the contract to continue for another year unless notice of termination should be given by one of the parties, the second count, mentioned in the next to the last paragraph of the opinion, alleging that the defendant on October 14, 1896, wrongfully discharged the plaintiff and wholly refused to perform the contract. Writ in the Municipal Court of the City of Boston dated February 5, 1897.

On appeal to the Superior Court the case at first was tried before *Bond*, J. The jury returned a verdict for the defendant, and exceptions alleged by the plaintiff were sustained by this court in a decision reported in 175 Mass. 358. The case then was tried before *Bell*, J. The material portion of the agreement is quoted in the first paragraph of the opinion.

The plaintiff contended that under the contract he was to be paid for his maintenance and support the sum of $100 per week during the term of his employment without reference to the amount of commissions which sales by the plaintiff might entitle him to receive, and that this should be the measure of damages for the breach of the contract. The amount of sales by the plaintiff before October 14, 1896, was about $30,000, and no sales were made by him for which he could have credit after that date. His commissions until his discharge and his share of the net profits during the term of the contract were not in excess of the amount recovered by and paid to him on a judgment in a former action brought by him on October 14, 1896.

The judge, without expressing any opinion as to the proper construction of the contract, stated that he would report the case, and that it should be tried for the purpose of having all questions of fact in the case determined by the jury, upon the theory of the plaintiff that he was entitled to compensation if he had performed his contract or been ready to perform it, and of having the damages assessed.

Accordingly the judge submitted the case to the jury generally upon the question whether there had been a breach of the contract by the defendant for which the plaintiff was entitled to damages, and whether the plaintiff had performed his part of the contract or had been ready to perform it, instructing the jury that if the defendant violated the contract and the plaintiff did not, the plaintiff might recover damages at the rate of $100 a week, less any sum which the plaintiff could have earned in his trade by reasonable diligence in getting another job. The jury returned a verdict for the plaintiff in the sum of $1,400.77 ; and the judge reported the case for determination by this court.

If the contract gave the plaintiff the right to receive the sum of $100 for each week without regard to commissions earned and percentage of profits, if any, then the verdict was to stand, but if the contract was to be construed as fixing the plaintiff's compensation by the amount of commissions earned and the share of the profits, if any, due him, as named in the contract, then the verdict was to be set aside and such disposition of the case was to be made as to the court might seem meet.

*A. Lincoln,* for the defendant.

*E. N. Hill,* for the plaintiff.

MORTON, J. This is an action for the breach of a written agreement entered into between the plaintiff and the defendant wherein the latter agreed to employ the plaintiff as salesman for one year beginning January 1, 1896. The plaintiff was discharged by the defendant on October 14, 1896, and the defendant refused to go on with the contract, and thereupon this action was brought. The case turns on the construction to be given to the agreement, the principal clause of which, so far as relates to the question now before us, is as follows : " 3. The party of the first part [the defendant] hereby agrees to pay to the party of the second part [the plaintiff] . . . a sum equal to seven and one half (7 1-2%) per cent of all the net sales of goods made by the party of the second part, and does hereby allow and permit the party of the second part to draw for his maintenance and support during the term of this agreement, a sum equal to one hundred ($100.00) dollars per week and such expenses as he may incur in travelling whilst in the performance of his duty as such salesman ; and also in addition thereto ten

(10) per cent of the net profits that the party of the first part may realize in his said business, it being understood, however, that the commissions allowed by the party of the first part to the party of the second part and the ten (10) per cent of the net profits as hereinabove referred to, are not to be drawn by the party of the second part until the end or termination of this agreement; excepting the sum which the party of the second part is hereby allowed to draw for his individual maintenance and support and for travelling expenses, which last named sum, to wit, the sum allowed 'for maintenance and support and travelling expenses shall be deducted from the amount of commissions and the ten per cent above referred to which at the termination of this agreement it shall·be found the party of the second part is entitled to receive from the party of the first part."

The plaintiff contends that, according to the terms of the contract, he is entitled to $100 a week during the year for which it was to continue, without regard to the percentages on the sales and profits. In other words, his contention is, in substance, that the contract amounted to a guaranty of $100 a week for his support and maintenance during the year which it covered. The defendant contends that the $100 per week is to be regarded as an advance on account of the percentages to which it might be found that the plaintiff was entitled at the termination of the agreement. We think that this is the true construction. The agreement provides in substance, as we construe it, that the defendant shall pay the plaintiff for the services to be rendered by him a sum equal to seven and a half per cent on the net sales of all goods made by the plaintiff and ten per cent on the net profits of the defendant's business. The sum thus agreed upon is to be paid at the end of the agreement and in the meantime the plaintiff is to be allowed and permitted to draw for his maintenance and support a sum equal to $100 per week, which is to be deducted from the sum which it shall be found the plaintiff is entitled to receive at the termination of the agreement. The $100 per week is spoken of as something to be drawn by the plaintiff and also as something which the defendant is to allow and permit him to draw, expressions which are inconsistent with anything in the nature of a guaranty. It is true that there is a provision that the seven and one half

and the ten per cent are not to be " drawn " by the plaintiff till the end of the agreement. But manifestly this relates to what will then be due to the plaintiff and has no tendency to show that the $100 per week is payable absolutely.

The defendant also contends that the plaintiff is not entitled to recover upon his declaration. Assuming, without deciding, that the question of pleading is properly before us, we think that the action can be maintained upon the second count. A right of action accrued to the plaintiff as soon as he was discharged by the defendant and the defendant refused to go on with the contract. In this respect the case differs from *Porter* v. *American Legion of Honor*, 183 Mass. 326, relied on by the defendant.

The jury found for the plaintiff under instructions which permitted them to find that he was entitled under the agreement to $100 per week absolutely for the rest of the term, less any sum which he could have earned in his trade by getting another job. This was error, and the result is that according to the terms of the report the verdict must be set aside and a new trial granted.

*So ordered.*